# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3006

_____

United States of America,

        Appellee,

v.

Justin Webb,

        Appellant.

Appeal from the United States
District Court for the
Eastern District of Missouri.

_____

Submitted: February 15, 2000

Filed: July 14, 2000

_____

Before WOLLMAN, Chief Judge, HANSEN, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

WOLLMAN, Chief Judge.

After he pled guilty to one charge of conspiracy to possess with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a) & 846, Justin Webb was sentenced by the district court[1] to 60 months' imprisonment and five years of supervised release. Webb appeals, and we affirm.

_____

[1]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri.

# I.

Following guidelines section 4A1.1, the district court assessed Webb four criminal history points, placing him in criminal history category III. Because the charge had a base offense level of 26, which the court decreased to 23 for Webb's acceptance of responsibility, Webb fell within a sentencing range of 57-71 months' imprisonment. After analyzing Webb's criminal history, the district court found that category III overstated the seriousness of Webb's past criminal conduct. The court thus departed downward pursuant to section 4A1.3, moving Webb into criminal history category I. Therefore, absent the statutory mandatory minimum sentence of 60 months' imprisonment, Webb would have fallen within a guidelines range of 46-57 months. After the departure, Webb requested that the court consider a "safety valve" reduction pursuant to 18 U.S.C. § 3553(f), which would render him eligible for a lesser sentence than the statutory minimum. The court concluded that the reduction was unavailable because the relevant guidelines provision, section 5C1.2, requires that a defendant not have more than one criminal history point, as determined under section 4A1.1.

On appeal, Webb contends that the district court erred when it tallied his criminal history points and when it considered him ineligible for the safety valve reduction. We review the district court's application of the sentencing guidelines de novo and its factual findings for clear error. See United States v. Bad Wound, 203 F.3d 1072, 1076 (8th Cir. 2000).

## A. Criminal History Points

Whether a prior sentence counts for criminal history purposes is a question of federal law. See United States v. Johnson, 12 F.3d 760, 766 (8th Cir. 1993). Under section 4A1.1, criminal history points are to be added for "each prior sentence," see

U.S.S.G. § 4A1.1, but section 4A1.2(c) provides an exception to this rule for certain misdemeanors and petty crimes.[2]

_____

[2]Section 4A1.2(c) states:

(c) Sentences Counted and Excluded

Sentences for all felony offenses are counted. Sentences for misdemeanor and petty offenses are counted, except as follows:

(1) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are counted only if (A) the sentence was a term of probation of at least one year or a term of imprisonment of at least thirty days, or (B) the prior offense was similar to an instant offense:

Careless or reckless driving
Contempt of court
Disorderly conduct or disturbing the peace
Driving without a license or with a revoked or suspended license
False information to a police officer
Fish and game violations
Gambling
Hindering or failure to obey a police officer
Insufficient funds check
Leaving the scene of an accident
Local ordinance violations (excluding local ordinance violations that are also criminal offenses under state law)
Non-support
Prostitution
Resisting arrest
Trespassing.

(2) Sentences for the following prior offenses and offenses similar to them, by whatever name they are known, are never counted:

In determining Webb's criminal history score, the district court assessed one point for Webb's prior Ohio conviction for the offense of "prohibitions," a first-degree misdemeanor, a charge based on Webb's possession of alcohol when he was 19 years old.  The court assessed two additional points under section 4A1.1(d) because Webb was on inactive probation for that conviction at the time of the instant offense.  Webb does not challenge the imposition of a fourth point for another Ohio conviction.

Webb argues, as he did before the district court, that the court should have excluded his prohibitions conviction under section 4A1.2(c) and thus have eliminated the three criminal history points based upon it.  Webb asserts that under section 4A1.2(c)(2) the crime of prohibitions is a "juvenile status offense" that should not have been counted and, alternatively, that it is "similar to" public intoxication, a crime also excluded.  See U.S.S.G. § 4A1.2(c)(2).  The government, in response, contends that the district court was correct to find that the offense was not a juvenile status offense and that the crime is more like driving without a license or like fish and game violations, offenses listed in section 4A1.2(c)(1), which provides for their inclusion if certain other requirements not relevant to our discussion are met.  The government argues that prohibitions is an adult offense that Webb committed as an adult who had not yet reached the age of majority.

"Juvenile status offense" is not defined in the sentencing guidelines.  In <u>United States v. Correa</u>, 114 F.3d 314, 319 (1st Cir. 1997), the First Circuit was confronted with two offenses that the defendant argued should be considered juvenile status offenses:  falsifying one's age to purchase alcohol and contributing to the delinquency

Hitchhiking
Juvenile status offenses and truancy
Loitering
Minor traffic infractions (<u>e.g.</u>, speeding)
Public intoxication
Vagrancy.

of a child. The court held that "[c]onsidering together the caselaw and the actual guideline provisions," a crime constitutes a juvenile status offense only if:

> (1) the defendant committed the crime as a juvenile, see U.S.S.G. § 4A1.2, comment. (n.7); (2) the conduct would have been lawful if engaged in by an adult, see United States v. Ward, 71 F.3d 262, 263-64 (7th Cir. 1995); and (3) the offense is not serious, see United States v. Hardeman, 933 F.2d 278, 281-83 (5th Cir. 1991).

Id. at 318-19. The offenses did not satisfy this test because Correa was 19 years old at the time he committed the offenses and the commentary to section 4A1.2 defines as a juvenile a defendant who is not 18 years old. See id. at 319; U.S.S.G. § 4A1.2, comment. (n.7). Correa also failed to meet the second part of the test. See Correa, 114 F.3d at 319.

We believe that the First Circuit's approach fits well with the goals of "certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records . . . while maintaining . . . flexibility . . . ." 28 U.S.C. § 991(b)(1)(B); see also Mistretta v. United States, 488 U.S. 361, 365-66 (1989). The first two parts of Correa's three-part test promote certainty and uniformity among defendants, while the third provides for consideration of individual circumstances. Accordingly, we adopt the Correa three-part test and apply it to the circumstances of this case.

Under this test, Webb's prohibitions conviction fails to meet the requirements for a juvenile status offense, for he was not a juvenile when he committed the offense. Accordingly, his prohibitions offense is not a juvenile status offense within the meaning of section 4A1.2(c)(2).

We next address Webb's argument that the offense of prohibitions is "similar to" the offenses enumerated in section 4A1.2(c)(2). In United States v. Mitchell, 941 F.2d

690, 691 (8th Cir. 1991), we defined "similar to" as it is used in section 4A1.2(c)(1)(B) and determined that it must be given its "normal, dictionary meaning," that is, two offenses are similar "if they resemble one another, whether or not they are 'related;'" they are similar if they have the same or similar character.  We have consistently retained that definition for the phrase "similar to" in other parts of section 4A1.2(c). See United States v. Jenkins, 989 F.2d 979, 979-80 (8th Cir. 1993); United States v. Ziglin, 964 F.2d 756, 758 (8th Cir. 1992); cf. United States v. Harris, 128 F.3d 850, 854 (4th Cir. 1997) (noting that "emphasis on the elements [of the offenses] comports with the plain meaning of 'similar'" for the purposes of section 4A1.2(c)).  Thus, to determine which offenses are similar to those listed, we consider the plain meaning of that term and compare the resemblance and character of the offenses.  See Mitchell, 941 F.2d at 961; cf. Correa, 114 F.3d at 319 ("The enumerated offenses [in section 4A1.2(c)(2)] all possess a bland quality that helps to distinguish them from more substantial transgressions . . . .").

Webb argues that being a minor in possession of alcohol is similar to public intoxication, whereas the government compares it to driving without a license. Although public intoxication has at least one of the same features as the crime of illegal possession of alcohol--namely, the alcohol--we believe that the character of Webb's offense is closer to that of driving without a valid license.  Offenses such as fish and game violations and driving without a license involve a defendant who affirmatively violates a regulatory scheme, whereas offenses such as juvenile status offenses and public intoxication tend to punish an offender on the basis of the offender's current state or status, see, e.g., United States v. Unger, 915 F.2d 759, 763 (1st Cir. 1990), particularly when that status might harm the public generally and which, in some cases, might cause harm to the individual.  They are legal actions gone awry, so to speak.  The prohibitions offense, on the other hand, represents a violation of a specific liquor control law, rather than being merely reflective of a status crime such as juvenile delinquency or an offense against the public peace.  Accordingly, because the offense of prohibitions does not properly belong to the category of offenses listed in section

4A1.2(c)(2), the district court did not err in counting Webb's conviction of that offense in determining his criminal history score.

## B. Safety Valve Reduction

We turn, then, to Webb's second contention, that the district court erred in finding him ineligible for the safety valve provision, which provides an exception to the application of mandatory minimum sentences for those charged with certain drug trafficking offenses. See United States v. Hendricks, 171 F.3d 1184,1185 (8th Cir. 1999). The parties agree that four of the five requirements of the safety valve provision have been met in this case. The contested criterion requires that "the defendant [] not have more than 1 criminal history point, as determined under the sentencing guidelines . . . ." U.S.S.G. § 5C1.2(1).

The district court found that Webb did not meet this requirement because he had four criminal history points. Webb contends that because the district court moved him into category I, which by definition is for those defendants who have only one or no criminal history points, he has at most one criminal history point, thus rendering him eligible for the safety valve. We do not agree.

Section 5C1.2 states that a defendant must not have more than one criminal history point. The commentary to section 5C1.2 explains that this means "more than one criminal history point as determined under § 4A1.1." U.S.S.G. § 5C1.2, comment. (n.1). Under section 4A.1.1, Webb has four criminal history points. Nothing in section 4A1.3, the provision under which the district court shifted Webb into a lower criminal history category, indicates that a category change under this provision deletes previously assessed criminal history points for the purposes of the section 5C1.2 analysis. As the Tenth Circuit has noted, "[s]ection 4A1.3 does not authorize a court to add or subtract individual criminal history points from a defendant's record . . . ." United States v. Owensby, 188 F.3d 1244, 1246 (10th Cir. 1999). Accord

-7-

Robinson,158 F.3d at 1294; United States v. Orozco, 121 F.3d 628, 630 (11th Cir. 1997); United States v. Resto, 74 F.3d 22, 28 (2d Cir. 1996); United States v. Valencia-Andrade, 72 F.3d 770, 774 (9th Cir. 1995). As "mechanistic" as section 4A1.1 may be, see United States v. Robinson, 158 F.3d 1291, 1294 (D.C. Cir. 1998) (per curiam), cert. denied, 526 U.S. 1011 (1999), we are bound by the words of the guidelines. Accordingly, having been properly charged with four criminal history points under section 4A1.1, Webb does not qualify for the safety valve reduction under section 5C1.2.

The sentence is affirmed.

MORRIS SHEPPARD ARNOLD, Circuit Judge, dissenting.

I dissent from the court's conclusion that the district court did not err in assessing Mr. Webb a criminal history point for possessing alcohol when he was 19 years old. I agree, and for the reasons that the court sets out, that Mr. Webb's crime was not a "juvenile status offense," but, with respect, I cannot concur in the court's holding that his offense was not "similar to" public intoxication and to the other offenses listed in U.S.S.G. § 4A1.2(c)(2). Although the court strives mightily to make Mr. Webb's offense look more like ones that should count for sentencing purposes than ones that should not, its effort ultimately fails.

The court concludes that Mr. Webb's conviction for possessing alcohol when he was 19 must be counted because he violated a regulatory scheme. But what the court omits to notice is that there are violations of regulatory schemes, *e.g.*, minor traffic offenses like speeding, that are never counted because U.S.S.G. § 4A1.2(c)(2) specifically excludes them from consideration when determining a sentence. It is therefore hard to see how anything can follow from a characterization of Mr. Webb's offense as a violation of a regulatory scheme.

What differentiates U.S.S.G. § 4A1.2(c)(1) from U.S.S.G. § 4A1.2(c)(2), and therefore what determines whether an offense is going to be counted for sentencing purposes, it seems to me, is not some artificial distinction between regulatory and status crimes (the distinction is impossible to maintain anyway), but rather the seriousness of the offense conduct. A simple glance at the two lists demonstrates this clearly: "Minor traffic offenses" do not count, but "careless or reckless driving" does; "loitering" does not count, but "trespassing" does; and "vagrancy" does not count, but "non-support" does. That being so, it seems to me that Mr. Webb's offense ought not to count for sentencing purposes because it is trivial, barely a crime, like a minor traffic offense, and bears a close resemblance to the offense of public intoxication, which the guidelines specifically exempt from the sentencing calculus.

There is, however, a larger point here, or at least another one. Even if the court's interpretation of the guideline is a reasonable one, and even if my proposed construction is wrong in the abstract, Mr. Webb is entitled to the benefit of the doubt. That is because the construction that I propose is not unreasonable and no less reasonable than the court's. That being so, Mr. Webb is entitled to the protection of the rule of lenity. "[W]here text, structure, and history fail to establish that the Government's position is unambiguously correct ... we apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." *United States v. Granderson*, 511 U.S. 39, 54 (1994). *See also United States v. Hasan*, 205 F.3d 1072, 1075 (8th Cir. 2000). This policy embodies " 'the instinctive distaste against men languishing in prison unless the lawmaker has clearly said they should.' " *United States v. Bass*, 404 U.S. 336, 348 (1971), quoting Henry Friendly, *Mr. Justice Frankfurter and the Reading of Statutes*, Benchmarks, 1967, at 196, 209.

I would therefore reverse the judgment and remand the case to the district court for resentencing.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.